CHARLES R. OLNEY *et ux. versus* SAMUEL S. HULL.

A testator, after devising to his wife the use of his real estate, while she remained his widow, proceeded as follows : " Should my wife marry or die, the land then shall be equal divided among my surviving sons, with each son paying sixty dollars to my daughters, to be equal divided among them, as soon as each son may come in possession of said land." It was *held*, that the remainder given to the sons was contingent until the marriage or death of the widow of the testator ; and that upon her death, the estate vested in a son who was then living, to the exclusion of the heirs of another son who died before the widow but after the death of the testator

WRIT of entry, in which the demandants, in right of the wife, Sarah Olney, demanded the possession of an undivided portion of a tract of land or farm in Swanzey.

The parties stated the following, among other facts.

Olney
v.
Hull.

On the 28th of August, 1809, Simeon Jones, who was then seised of the whole of the land, made his will, containing the following clauses :

" I give to my dear and loving wife, as long as she remains my widow, the improvement of all my lands and buildings : " " Should my wife marry or die, the land then shall be equal divided among my surviving sons, with each son paying sixty dollars to my daughters, to be equal divided among them, as soon as each son may come in possession of said land." It appeared, that the testator died previously to the 3d of November, 1812, on which day his will was duly proved and allowed ; and that Lydia Jones, the widow of the testator, died in May, 1835.

The testator, at his decease, left three daughters and six sons. Gardner Jones, one of the sons, left Swanzey in 1824, and was supposed to be dead, he not having been heard from for more than seven years next preceding the death of Lydia Jones. Gardner left two children, one of whom was the demandant, Sarah Olney. Four of the other sons of the testator died before the decease of the widow, two of them leaving children. The remaining son of the testator, Abraham G., and the three daughters, were still living.

On the death of the widow, Abraham G. entered upon the whole of the premises, except a portion which had been set off on an execution, claiming under the will, as the then only surviving son of the testator, and on the 2d of June, 1836, conveyed the same to John B. Wood. On the 3d of the same month, Wood conveyed to the tenant.

It was agreed, that such judgment should be entered and such disposition made of the case, as the whole Court should direct.

*Oct. 27th*      *Warren* and *A. Bassett*, for the demandants, cited *Dingley* v. *Dingley*, 5 Mass. R. 535 ; *Perry* v. *White*, 2 Cowp. 780 ; 8 Petersd. Abr. 333 ; *Doe* v. *Provoost*, 4 Johns. R. 61 ; *Maberly* v. *Strode*, 3 Ves. jun. 450 ; *Rose* v. *Hill*, 3 Burr. 1881 ; *Garland* v. *Thomas*, 4 Bos. & Pul. 82 ; *Edwards* v. *Symonds*, 6 Taunt. 213 ; *Roebuck* v. *Dean*, 2 Ves. jun. 265 ; *Perry* v. *Woods*, 3 Ves. jun. 204.

*W. Baylies*, *Battelle* and *E. Williams*, for the tenant, cited

*Long* v. *Blackall*, 3 Ves. jun. 486 ; *Baldwin* v. *Karver*, 1 Cowp. 309 ; Swinb. 599, note ; *Robinson* v. *Robinson*, 1 Burr. 38 ; *Doe* v. *Lawson*, 3 East, 278 ; *Hurlburt* v. *Emerson*, 16 Mass. R. 241 ; *Goodright* v. *Dunham*, 1 Dougl. 264.

Olney
*v.*
Hull.

*April term*
1839,
*in Bristol.*

MORTON J. delivered the opinion of the Court. The demandants, in right of the wife, claim an undivided portion of a certain farm in this county. The tenant claims the whole. These respective claims and titles will be examined, as far as may be necessary to the decision of the case. The farm in controversy was once the undisputed estate of Simeon Jones. In 1809, he made his will, which afterwards was duly approved and allowed. Upon the *true construction* of that will must depend the rights of these parties.

Simeon Jones left *nine* children, *six* sons and *three* daughters. *Five* of the six sons died before their mother. One of the sons is now alive, under whom the tenant claims. The demandant's wife is one of two heirs of one of the sons who died before his mother. These facts raise the question, whether this will gave to the sons a *vested* or a *contingent* remainder. If the former, then the demandant's wife will be entitled to a moiety of the share which vested in her father before his death. If it was only a contingent remainder, to take effect on the death of the mother, then as the son died first nothing vested in him, and of course nothing descended to his heirs.

Fortunately it will not be necessary to enter very deeply into the discussion of the intricate and uninteresting doctrine of remainders. It is enough in the outset to state and carry with us into the investigation, the well established principle, that the law has no partiality for *contingent* remainders, but, in all cases of doubtful construction, leans towards *vested* remainders. *Dingley* v. *Dingley*, 5 Mass. R. 537. However, the intention of the testator is always to be the polar star to guide our inquiries. Whenever the meaning can be ascertained, it must govern, whether it result in *contingent* or *vested* remainders.

In this will, it is perfectly clear, that the testator intended to give to his wife the improvement of his farm, during her life or widowhood. And having carved out this estate for her, he gave the remainder to his surviving sons, to be equally

Olney
v.
Hull.

divided between them. Had he given generally to his sons all who happened to be alive at his decease, viz. all who survived him, would have taken. This construction the demandants contend for. But if "*surviving sons*" meant those who outlived the mother, then, as one only survived her, he took the whole estate, which the tenant now holds under him. Perhaps the reason of the preference which the law gives to *vested* over *contingent* remainders, could not be better illustrated than in this case. As several of the sons had families and left children, justice would seem to require, that these grandchildren should partake of their ancestor's bounty, rather than that the whole should go to one child in exclusion of all the other children and grandchildren. This certainly is a strong reason to influence the mind of the testator to induce him to give *vested* rather than *contingent* remainders. And it may lawfully and properly influence our minds in cases of doubtful construction; because we should suppose it more probable, that the testator intended the one than the other. But it can never authorize us to make a will for him. He says, " Should my wife marry or die, the land *then* shall be equal divided among my surviving sons." The time when the estate was to be divided among the sons, is certain and definite. It was when the intermediate estate terminated by the death or marriage of the tenant. Among whom was it to be divided? not those who survived any prior event, not those who survived the father ; but those who survived that particular event, those surviving the death or marriage of the widow.

Had the testator intended to give to the sons who were alive at his own death, he would have said, "my sons who survive me, or whom I may leave, or who shall be alive at my decease." Or, if he had given to his sons generally, the effect would have been the same. It would be more plausible to suppose, that he meant all the sons surviving the making of the will; but this would be an unnatural construction.

The provision, that each son should pay the daughters sixty dollars, on coming into possession, cannot have much tendency to show, that he intended to give a vested remainder. No doubt he expected, that the sons would survive the mother, at least, more than one of them, and that the daughters would

receive a much larger sum than sixty dollars. But it cannot be inferred, that he intended the heirs of deceased sons should take portions ; because if he had, it must be presumed, that he would have required the sons' heirs, as well as the sons themselves, to pay the sixty dollars to the daughters.

The construction of wills and other instruments depends so much upon the peculiar expressions used in each, that not much aid can be derived from adjudged cases. Yet in the case of *Hurlburt* v. *Emerson*, 16 Mass. R. 241, the language used is so similar to this, that it may well be referred to as being in point.

On the whole, we are clearly of opinion, that the fair, and only fair construction of the language in the will, gives the estate to such sons as should survive the mother ; that until her death it was uncertain who would be alive to take, and therefore, that no estate vested in any one before that event happened ; and that, as one only survived her, the whole estate, on her death, vested in him. As nothing vested in the father of the demandant's wife, nothing descended to her ; and so this action cannot be maintained. We have not thought it necessary or expedient, to inquire into the tenant's title, or to examine any of the questions growing out of the several levies of executions introduced into the case.

*Demandants nonsuit*